THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO ENERGY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH OF PUERTO RICO, et al., <br><br> Defendant. <br><br>------------------------------------------------------- <br><br> TOTALENERGIES MARKETING PUERTO RICO, CORP., <br><br> Plaintiff, <br><br> v. <br><br> THE COMMONWEALTH OF PUERTO RICO, et al., <br><br> Defendant | Civil No. 20-1591 (ADC) <br><br><br><br><br><br><br><br><br> Civil No. 20-1725(ADC) <br> (Consolidated) |

**OPINION AND ORDER**

**I.   Procedural background**

This case originated in 2020 when plaintiffs Puerto Rico Energy, LLC ("PRE") and TotalEnergies Marketing Puerto Rico, Corp. ("TEMPR")[1] filed the captioned consolidated

---

[1] Except where necessary, the Court will indistinctively refer to either co-plaintiff or to both in the plural "plaintiffs."

declaratory and injunctive actions against the Commonwealth of Puerto Rico and other state officials (collectively "Commonwealth"). Plaintiffs claim that Puerto Rico Law No. 60 of June 27, 2020 ("Law 60") is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-2806 ("PMPA"), and therefore unconstitutional under the Supremacy Clause of the United States Constitution.[2] Specifically, Law 60 is preempted because it "indirectly affects the termination or non-renewal of petroleum franchises by prohibiting franchise contract terms that purport to give [plaintiffs'] operational control over convenience stores and other ancillary businesses[.]" **ECF No. 181** at 2. Moreover, plaintiffs contend that such ancillary businesses "have become essential to the operation of [plaintiffs'] franchises in response to changes in consumer preferences and market conditions." *Id*.[3]

The Commonwealth moved to dismiss the consolidated actions. On September 22, 2021, the Court granted in part and denied in part the Commonwealth's motions to dismiss. **ECF No. 71**. In its relevant part, the Court found that plaintiffs' commerce clause, preemption, and regulatory taking claims passed Fed. R. Civ. P. 12(b)(6)'s plausibility bar.

---

[2] Plaintiffs also raised a claim under 42 U.S.C. § 1983 seeking redress for the deprivation of statutory rights under the color of state law. Consolidated Civil No. 20-1725, ECF No. 1 at 1. This claim, clearly inapposite in this case, was dismissed with prejudice by the Court. **ECF No. 71**.

[3] Consolidated Civil Case No. Civil No. 20-1591 essentially posits that the state law was intended to "devastate its business plans" simply because it is an "off-island company." *Id*., at 3. Specifically, it claims that "(1) Law 60 violates the Commerce Clause and the Federal Relations Act; (2) Law 60 is preempted by… PMPA; and (3), Law 60 is a "taking" of Puma's property for which Puma has not been paid just compensation." **ECF No. 71** at 1; *Id*., at 4. Similarly, the plaintiff in Consolidated Civil No. 20-1725 claims that "Sections 2 and 3 of Act. No. 60-2020 are preempted by the PMPA." **ECF No. 71** at 2. However, in the pending motions, plaintiffs only address the preemption claim.

The Court, however, was very careful and emphatic in noting that plaintiffs' victory was only temporary. Indeed, the Court indicated that plaintiffs had to be "thankful" for the fact that the proceedings were at an early stage. Moreover, the Court highlighted that plaintiffs were far from the finish line in the commerce clause violation claim. For instance, the Court concluded that "there is no discrimination from [Law 60's] face; that is… a differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. Therefore, [plaintiffs'] must be examined under the scope of discriminatory purpose or effect." **ECF No. 71** n.29. As to the lingering question of "discriminatory purpose or effect," as phrased by the then-presiding District Court Judge Daniel R. Domínguez, the Court expressed the need to "consider further evidence."[4] *Id*., at 28. Yet, the Court harbored serious "doubts" that plaintiffs (specifically, then plaintiff Puma Energies PR), could sustain any claim of being either an "off-island" entity or "similarly situated" or that it had a valid claim under the interstate commerce clause. *Id*.

Likewise, the Court denied Fed. R. Civ. P. 12(b)(6) dismissal of the preemption claim, which hinges exclusively on plaintiffs' theory that the "secondary agreements" are part of the franchise or franchise relationship covered under the PMPA. The Court thus stated it needed a "factual basis." **ECF No. 71** at 29. Nonetheless, the Court also explicitly determined that such

---

[4] Notably, however, the Court did not say it needed the parties to engage in discovery nor did it draw a line as to its extent.

question was "ultimately a matter of law." *Id*. Thus, it clarified that it needed to examine both the franchise agreements and the "secondary agreements."[5] *Id*. Finally, the Court included a "word of caution" on the preemption issue, stating:

> this determination to continue forward does not imply that the Court agrees with Plaintiffs' reading of the PMPA… Defendants posited various convincing arguments as to the narrow reading of the terms franchise and franchise relationship in the context of the sale, consignment or distribution of motor fuel, that will be afforded serious consideration from the Court when the time comes. Further, the fact that Act No. 60-2020 does not expressly regulate the circumstances in which franchisors may terminate a franchise or decline to renew a franchise relationship must be afforded considerable weight.

**ECF No. 71** at 30 (internal quotation marks omitted).

The Court also found that plaintiffs' Fifth Amendment taking claim survived Fed. R. Civ. P. 12(b)(6). Assuming the well-pleaded allegations in the complaint were true, the Court found that "it may be inferred at this stage that their investment backed expectations were reasonable." **ECF No. 71** at 30. The Court added that "although from its face Act No. 60-2020 is not discriminatory… at this stage… a determination as to the Act's character for purposes of this analysis is premature" and that "in order to perform the *Penn Cent[ral]* analysis, the Court will need to delve into the evidence[.]" *Id*., at 31.[6]

---

[5] Evidently, no discovery is needed for these purposes because the parties herein are signatory parties to these agreements.

[6] "[T]he Penn Central inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests. Ultimately, this inquiry aims to identify regulatory actions that are functionally equivalent to the classic taking in which the government

Accordingly, on October 12, 2021, the Commonwealth filed responsive pleadings. **ECF Nos. 72-73**. Afterwards, the Puerto Rico Gasoline Retailers Association ("PRGRA," and together with the with Commonwealth the "defendants") intervened. **ECF Nos. 88, 92, 94**.

On November 30, 2021, the Court entered a case management order. In its amended version, the Court scheduled the "close of fact discovery" for February 2023. **ECF Nos. 87, 127. ECF Nos. 127.**

Before the two-year discovery window closed, on December 16, 2022, the consolidated actions were reassigned to the undersigned. **ECF No. 131**. As requested by the parties and under the impression that it would ultimately cut down the controversies before the Court, the Court amended the case management once again to extend the discovery deadline until March 21, 2023, and the disclosure of expert reports by May 21, 2023. **ECF No. 134**.

On June 8, 2023, the Court held a status conference where the parties were granted reasonable time to argue their positions and brief on the pending matters, including any discovery issues. **ECF No. 177**. Among the arguments raised during the hearing, defendants argued that they had disclosed enough evidence to plaintiffs and that the remaining discovery requests were improper. To wit, much if not all the remaining discovery requests by plaintiffs revolved around the intent of the Puerto Rico legislators, executive branch officials, public

---

directly appropriates private property or ousts the owner from his domain." *Franklin Mem'l Hosp. v. Harvey*, 575 F.3d 121, 127 (1st Cir. 2009)(internal citations omitted).

employees, bill's sponsors, staffers, lobbyist, and other public officials that issued reports or opinions regarding the issues addressed in the bill that eventually was signed into Law 60. *See also* **ECF No. 174**. Defendants contended that the plain text of Law 60, its statement of reasons, and the publicly available reports submitted for the consideration of the bill suffice to carry the parties' probative burdens in the instant actions.

According to the parties' requests during the hearing and hoping additional time would help the parties resolve any pending discovery issues and quit chasing after any unreasonable discovery, the deadline to conclude discovery was yet again moved to September 30, 2023. **ECF No. 177**. In hindsight, however, it seems that the Court was too optimistic. Plaintiffs continued their discovery blitz, resulting in several discovery disputes that the Court must now resolve.

## II. Legal standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). However, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

When a party objects to discovery requests as being impermissibly overbroad, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." Fed. R. Civ. P. 26 advisory committee's note (2000), subdivision (b)(1). On

the other hand, "when an objection arises as to the relevance of discovery, 'the court [will] become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action.'" *Sánchez–Medina v. Unicco Serv. Co.*, 265 F.R.D. 29, 37 (D.P.R. 2010) (quoting *In re Subpoena to Witzel*, 531 F.3d 113, 118 (1st Cir. 2008)). "The burden lies on the objecting party to show that an interrogatory is improper." *Moreno Rivera v. DHL Glob. Forwarding*, 272 F.R.D. 50, 57 (D.P.R. 2011) (quoting 8B The Late Charles Alan Wright, et al., Federal Practice and Procedure § 2173 (3d ed).

### III. Discussion

Essentially, there are three pending motions with requests for further discovery. On one hand, plaintiffs seek to compel non-parties to answer and produce documents pursuant to subpoenas and to continue its quest for additional deposition testimony from state officials. **ECF Nos. 147, 166**. According to plaintiffs, they need the subpoenaed information in order to sustain their preemption claim. However, they also admit that, as franchisors, they "possess some information concerning the performance of service stations." **ECF No 147** at 5. Moreover, plaintiffs admit this action "presents a purely legal question." **ECF No. 189** at 2. The deposition testimony they continue to seek from state officials is "about the process of passing Senate Project 1146 and [Law] 60 of 2020 at the legislative level." **ECF No. 176-1** at 8.

On the other hand, defendants filed a motion on November 13, 2023 timely seeking an extension of time to conduct depositions and to file dispositive motions based on that information. **ECF No. 180**. The reason for the requested extensions is that plaintiffs notified Jeffrey Bernard's expert report on October 2, 2023, and on November 13, 2023, provided copies of documents relevant thereto to defendants. Moreover, plaintiffs notified Leonardo Giacchino's expert report and exhibits on October 25, 2023. Ten days later, defendants asked to take deposition of plaintiffs' experts and corporate representatives' depositions. **ECF No. 180-1** at 2.

### A.     Plaintiffs' misreading of Court's Opinion and Order at ECF No. 71

As conceded by plaintiffs at the June 8, 2023 status conference and filings, most of their pending discovery requests (written and depositions) concern aspects of the "intent" behind the enactment of Law 60 or the information available to government and the Puerto Rico legislators, public officials and third parties while debating over the bill.[7] On this matter, considering the Court's previous determinations at **ECF No. 71**, this Court has been more than lenient and allowed plaintiffs more leeway than what they are entitled to in this case. Without a doubt, plaintiffs' arguments in support of discovery exaggerate the limited discovery ordered in the

---

[7] Some of plaintiffs' requests are facially preposterous: "All communications that The Commonwealth had with the Governor and/or the Office of the Governor at any time related to the opinions on Law 60… not limited to, contracts, e-mails, text messages, and letters. In this particular matter, plaintiffs refer to the DOJ, its DOJ's Legislation Division, the Office of Antimonopolistic Affairs and the division that interacts with the Department of Consumer Affairs, and the Legislative Chambers[;]" "All communications that The Commonwealth had with any member of the Puerto Rico Senate, at any time, related to the opinions on Law 60… not limited to, contracts, e-mails, text messages, and letters. In this particular matter, plaintiffs refer to the DOJ, its DOJ's Legislation Division, the Office of Antimonopolistic Affairs and the division that interacts with the Department of Consumer Affairs, and the Puerto Rico Legislative Assembly Offices." **ECF No. 166-2**.

Opinion and Order at **ECF No. 71**. The discovery referred to there was limited in both scope and nature.

First, as to plaintiffs' commerce clause discrimination challenge, the Court held that comments of "Senator Ríos" uttered on the "Senate floor" were plausibly supportive of the claim but that it needed to consider "further evidence." **ECF No. 71** at 27. Nowhere did the Court suggest that it needed evidence of comments made outside the Senate floor, text messages between sponsors of the bill and lobbyists or gasoline retailers, or reports or discussions that were not part of the legislative process. Neither did the Court suggest it needed to know what the employees of the Puerto Rico Office of Antitrust Affairs discussed regarding the bill, their opinions, or the complaints they handled.

Second, the discovery granted in connection with plaintiffs' preemption claim was limited to the agreements between franchisor and franchisee. Specifically, the Court stated: "at this stage, the Court has not examined the franchise agreements nor the secondary agreements that Plaintiffs allege fall under the franchise or franchise relationship covered by the PMPA; consequently, the Court cannot determine whether these secondary agreements fall within the scope of the federal legislation." **ECF No. 71** at 29. There is absolutely no mention of a need to discover anything else aside from the agreements *per se*. This reading is further bolstered by the fact that immediately before asking for the agreements, the Court warned that "this is ultimately a matter of law." *Id*.

Third, the Court alluded to the *"Penn Central" (Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978)) criteria in determining it needed evidence to rule on plaintiffs' regulatory taking claim. **ECF No. 71** at 31. Six pages earlier, the Court correctly outlined the three basic *Penn Central* elements "(1) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations; (2) the regulation's economic impact on the property owner; and (3) the character of the government action." Evidently, plaintiffs, as "claimants" of the regulatory taking, do not need discovery on two out of three of these topics.

Thus, plaintiffs' burdensome outstanding requests for discovery are denied as they exceed the limited discovery ordered in the Opinion and Order at **ECF No. 71**. But even if the Court found that the scope of plaintiffs' discovery was within the Opinion and Order's parameters, it must be denied on additional grounds.

### B. The abundance of discovery in this case

Plaintiffs have been allotted years of discovery in order to present their case. On November 21, 2023, plaintiffs admitted that the "parties have [] taken extensive discovery." **ECF No. 181** at 4. Moreover, they concede that the Puerto Rico Justice Department has tendered answers to written discovery since March 14, 2023. *Id*. The PRGRA forwarded their answers to plaintiffs' written discovery on December 2, 2022 and supplemented their answers and production of documents on March 8, 2023. *Id*. On August 22, 2023, plaintiffs took deposition testimony of a non-party "consultant." *Id*. They have also taken deposition testimony from

**Civil No. 20-1591 (ADC)**                                                                                                      **Page 11**

several government officials, including public officials from the Puerto Rico Department of Consumers Affairs, the Puerto Rico Department of Justice, and the Puerto Rico Office of Antitrust Affairs to obtain testimony "about the legislative process of both Senate Project 1146 and [Law] 60 of 2020." **ECF No. 176-1** at 8.

However, for almost a year, plaintiffs have stalled the case. They have oppressed defendants, as well as a substantial number of public officials,[8] with two requests for further discovery (**ECF Nos. 166 and 180**): to continue taking deposition testimony from state officials regarding privileged topics (as discussed in Section C of this Opinion and Order) and to compel discovery requested via subpoenas served upon non-parties. *See* **ECF No. 166**. Indeed, as to the "pending" discovery, plaintiffs concede that its specific purpose: is to obtain further testimony and information from state officials "about the process of passing Senate Project 1146 and [Law] 60 of 2020 at the legislative level." **ECF No. 176-1** at 8.

Yet, as plaintiffs acknowledge, "this action presents a purely legal question-federal preemption[.]" **ECF No. 189** at 2. In the motions for extension of time to file a motion for summary judgment, they also indicated that the "additional time requested will enable TEMPR to complete the drafting of a memorandum of law that includes abundant uncontested facts and sophisticated legal arguments for which a meticulous examination of hundreds of documents,

---

[8] The Court will not overlook these actions if the occasion for a ruling on this issue arises.

from deposition transcripts to franchise agreements and expert reports, is essentially in order[.]" *Id*.

Considering the nature of the consolidated actions, the Court finds that plaintiffs requests for further discovery are uncalled for and unnecessary. Thus, the Court herein denies plaintiffs' discovery requests, including any issues raised or related to **ECF Nos. 147, 166**, under Fed. R. Civ. P. 26(c) and pursuant to this Court's discretion. After all, "[d]istrict courts exercise broad discretion to manage discovery matters." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). "While district courts are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants, limits do exist." *Id*.

### C. State official's legislative privilege

Even if the grounds set forth above were not sufficient, plaintiffs' requests would be denied for the following reasons. A day before the Court entered its Opinion and Order at **ECF No. 71**, the Court of Appeals for the First Circuit addressed questions regarding legislative privilege both in a general sense and as it relates to discovery in the context of constitutional challenges in civil cases. Specifically, in *American Trucking Associations, Inc. v. Alviti*, 14 F.4th 76, 85 (1st Cir. 2021), the First Circuit considered that the "degree to which state officials may be subjected to discovery in civil cases alleging violations of the federal constitution raises important questions" including questions regarding the "appropriate balance of power between

the states and the federal government." *Id.*, at 85. The need for an appropriate balance of such powers requires "legislative immunity and privilege by state lawmakers[.]" *American Trucking Associations, Inc. v. Alviti*, 14 F.4th at 87. This privilege of state officials is "governed by federal common law[.]" *Id.* And although it is not rooted in the Speech and Debate Clause, "principles of comity command careful consideration." *U. S. v. Gillock*, 445 U.S. 360, 370 (1980). As such the "interests in legislative independence served by the Speech or Debate Clause[9] remain relevant in the common-law context." *American Trucking Associations, Inc. v. Alviti*, 14 F.4th at 87.

According to these interests and principles, "federal courts will often sustain assertions of legislative privilege by state legislatures except when important federal interests are at stake[.]" *Id.*[10] Despite its name, the legislative privilege is not limited to state legislators. In *Alviti*, citing Supreme Court precedent, the First Circuit clarified that the legislative privilege extends to communications between legislators and aides concerning legislative acts, motives and purposes behind an act, and communication in preparation for the act. *Alviti*, 14 F.4th at 87. It also covers "local executive officials" or "non-legislators" and may be invoked during discovery, "not just at trial." *Id.*, at 88. In other words, it shields state officials "from having to produce

---

[9] The legislative privilege of federal officials stems from the Speech and Debate Clause of the U.S. Constitution, Art. I, § 6, cl. 1. It aims to "prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary[,]" *Gravel v. U. S.*, 408 U.S. 606, 617 (1972), and also protects from proceedings that "divert their time, energy, and attention from their… legislative tasks[.]" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975).

[10] In most cases, these "important federal interests" have been recognized only in "federal criminal prosecutions." *U. S. v. Gillock*, 445 U.S. at 373.

documents; or that, in some cases, the privilege may apply even if the state lawmakers are not defendants in the action." *Id.*, at 88.

Much like in *Alviti*, this case is "neither a federal criminal case nor a civil case in which the federal government is a party." *Alviti*, at 88. Neither is this case one about civil rights violations or gerrymandering discrimination. *See In re Hubbard*, 803 F.3d 1298, n.10 (11th Cir. 2015)("An official federal investigation into potential abuses of federal civil rights is a far cry from a private lawsuit attacking a facially valid state statute by attempting to discover the subjective motivations of some of the legislative leaders and the governor who supported it.") Although this case may implicate a federal interest in enforcing federal law or the Constitution, it would be much too wide of an exception to forego the privilege here considering that "[m]any cases in federal courts assert violations of federal law by state legislators who are not joined as parties to the litigation." *Alviti*, at 88. Thus, sacrificing the privilege in such a regular case, as the one before the Court, will certainly render it worthless. *See Alviti*, at 88 ("Were we to find the mere assertion of a federal claim sufficient, even one that addresses a central concern of the Framers, the privilege would be pretty much unavailable largely whenever it is needed."

Moreover, even if relevant, "the probative value of the discovery sought by [plaintiffs] is further reduced by the inherent challenges of using evidence of individual lawmakers' motives to establish that the legislature as a whole enacted [Law 60] with any particular purpose." *Alviti*, at 90. Although the Court in its 2021 Opinion and Order suggested that

"expressions that Senator Rios made in the Senate floor seem to support [p]laintiffs' theory[,]"[11] **ECF No. 71** at 27, the fact remains that, "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *United States v. O'Brien*, 391 U.S. 367, 384 (1968).

Similar to the grounds supporting plaintiffs' pending discovery requests, in *Alviti*, the district court allowed discovery based on purported "discriminatory statements" made by Rhode Island's Governor as well as comments from the Governor's staff members and state legislators.[12] Based on this alleged discrimination, which is similar in nature to that alleged by plaintiffs here, the *Alviti* plaintiff claimed that the state actions violated the commerce clause and sought documents and deposition testimony:

> from several non-party drafters and sponsors of [the act] -- Governor Raimondo, Speaker Mattiello, and Representative Ucci ("the State Officials") -- to bolster its discriminatory-intent claims. Specifically… 1) any efforts to mitigate the economic impact on Rhode Island citizens; (2) the expected or actual impact of the toll caps on in-state vs. out-of-state

---

[11] Compare with *Alviti*, where the First Circuit reversed the district court's ruling and quashed the subpoenas even though the "district court reasoned that the evidence sought… would shed light on the State Officials' intent in drafting [the law], which is relevant to the dormant Commerce Clause[…] And, in the district court's view, the discovery sought would provide necessary context for the public statements made by the State Officials and their staff regarding [the law], which otherwise appeared to be patent statements of discriminatory intent.") *Id.*, at 89(internal quotation marks omitted).

[12] The plaintiff in *Alviti* asserted that the drafters of the act "were aware of and intended to achieve the cost-shifting effects of the toll caps, citing that: (1) former House Speaker Nicholas Mattiello reportedly stated, People should know that 60 percent of the money [for tolls] is going to come from out of state; (2) former Representative Stephen Ucci reportedly stated, The tolling relies on 60 percent revenue from out of state trucks who would have never paid to come through this state; and (3) RIDOT Director Peter Alviti, when asked about the toll caps during a state legislative hearing, reportedly stated, That's part of the mitigation that we put in place. That local businesses[,] they benefit." *Alviti*, at 82.

truckers; (3) the expected or actual impact of tolling only certain classes of trucks on in-state vs. out-of-state truckers; (4) the potential impact on interstate commerce; (5) alternative methods for raising funds; (6) drafts of [the act] and related, failed bills, including mark-ups, comments, red-lines, revisions, etc.; (7) communications between the former Governor and legislators regarding [the act] or other methods of raising funds; and (8) the public statements made by the movants and others.

*Alviti*, at 83. The *Alviti* district court denied defendants' oppositions finding that plaintiff's "interest in the discovery was greater than the State Officials'… interests in preventing disclosure." *Id*. The First Circuit Court of Appeals ordered the district court to reverse its denial and to issue an order in favor of the state officials.[13]

Clearly, the evidence plaintiffs have gathered and continue to peruse is privileged information. This Court has never encountered a case where a civil plaintiff literally went after the though process and communications of public officials when enacting a law in order to sustain claims of federal preemption, regulatory taking or under the commerce clause. Even in cases where discriminatory intentions against interstate commerce are alleged, "we ordinarily look first to statutory text, context, and legislative history, as well as to whether the statute was closely tailored to achieve the [non-discriminatory] legislative purpose asserted by the state." *Alviti*, at 90 (*quoting Family Winemakers of Cal. v. Jenkins*, 592 F.3d 1, 13 (1st Cir. 2010)). For these

---

[13] Because a state consultant in the *Alviti* case had other means of seeking appellate review from the First Circuit, the First Circuit did not issue any ruling on his behalf via mandamus. However, it is important to note that the First Circuit Court of Appeals did not close the door to the argument that the legislative privilege covered the private consultant. *Alviti*, at 86.

reasons too, plaintiffs' requests and pending motions for additional discovery are hereby denied.

### IV. Conclusion

For the reasons stated above, the Court hereby **ORDERS**:

- The motion to compel service station retailers (non-parties) to comply with subpoenas at **ECF No. 147**, which, according to plaintiffs, is relevant to the preemption claim and seeks information as broad as the "overall operation and other related aspects of a service [] station", is **DENIED** and the subpoenas quashed.

- The motion for joinder at **ECF No. 148**, which included no additional requests or argument in support, is **DENIED**.

- The informative motion at **ECF No. 150** is **NOTED**.

- The informative motion at **ECF No. 152** is **NOTED**.

- The motion to inform availability at **ECF No. 154** is **NOTED**.

- The motion to deem unopposed plaintiffs' motions for reconsideration, erroneously filed as an "informative motion" at **ECF No. 160** is **MOOT** in light of the Order at ECF No. 161 which denies the motion for reconsideration.

- The motion for leave to reply at **ECF No. 165** is **MOOT**. *See* ECF No. 172 addressing ECF Nos. 163 and 164.

- The joint motion to compel discovery and deposition of state officials at **ECF No. 166** is **DENIED**.

- The motion for leave to reply at **ECF No. 176** is **DENIED**.

- Defendants' motion at **ECF No. 180** is **GRANTED**. The parties are granted 5 days to file a joint motion informing available dates to conduct such depositions, which, absent exigent circumstances should not be later than March 30, 2024.

- The motion for leave to reply at **ECF No. 183** and the motion to withdraw document at **ECF No. 186** are **MOOT**.

- Plaintiffs' motions for extensions of time to file motions for summary judgment at **ECF Nos. 184, 185, 189, 192** are **GRANTED IN PART and DENIED in PART**. Plaintiffs' motions for summary judgment are due by April 15, 2024.

- The motions for leave to reply at **ECF No. 190** and **191** are **MOOT**.

- Considering that *Alviti* is binding precedent, should plaintiffs rely on evidence obtained in violation of the legislative privilege, related thereto or derived therefrom, plaintiffs must include legal authority supporting such action.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of February 2024.

                                                  **S/AIDA M. DELGADO-COLÓN**
                                                      **United States District Judge**